332 F.Supp. 1202 (1971)
Donald L. LEWIS, Plaintiff,
v.
CHRYSLER MOTORS CORPORATION, Defendant.
No. 71 C 171(3).
United States District Court, E. D. Missouri, E. D.
June 24, 1971.
*1203 Gordon F. Webb, Clayton, Mo., Blumenfeld, Kalishman, Marx & Tureen and Paul R. Ferber, St. Louis, Mo., for plaintiff.
Thompson, Mitchell, Douglas, Neill & Guerri, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
This matter is before the court on defendant's Motion to Dismiss for Failure to State Claim upon which Relief can be Granted.
Plaintiff's complaint in this cause seeks to allege a claim pursuant to the Automobile Dealers Franchise Act, 15 U. S.C. §§ 1221-1225. The matter is pending before the court on defendant's motion to dismiss for failure to state a claim for the reason that plaintiff is not an "automobile dealer" as defined by the Act.
The act defines an automobile dealer as "any person, partnership, corporation, association, or other form of business enterprise resident in the United States or in any Territory thereof or in the District of Columbia operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons." The term "franchise" is defined as "the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract."
The written agreements involved in this case consist of:
(1) Exhibit B attached to the petition which is the Dodge Direct Dealer Agreement, to which Chrysler Motors Corporation and its wholly owned subsidiary, Upland Dodge, Inc. are parties, with plaintiff executing the agreement on behalf of Upland Dodge, Inc. as president.
(2) Exhibit A attached to the petition which is the Management Agreement between Chrysler Motors Corporation, Upland Dodge, Inc. and the plaintiff as the Dealership Manager. The agreement gives full management duties to the plaintiff under the direction and control of the Board of Directors of Upland Dodge, Inc. It required plaintiff to place in escrow $7,000 together with at least 50% of any bonus credited to plaintiff as manager. On December 31, 1968, all such funds so deposited were to be used to purchase stock of the dealership, it being intended that plaintiff should acquire at least 25% of defendant's total investment in the dealership corporation. The Management Agreement granted plaintiff no voting control or ownership interest in the dealership corporation prior to such acquisition of stock.
Plaintiff makes no allegation of a proprietary or equitable ownership in the dealership. He seeks damages under the statute on the ground that he has suffered and will in the future suffer loss of profits on account of the bad faith action of defendant in causing plaintiff to terminate the agreement which, had it not been terminated, would have enabled him to acquire part ownership.
The issue presented for determination is, therefore, whether the relationship of the parties as alleged in this case makes plaintiff an "automobile dealer" operating under a "franchise" within the meaning of the Act.
The statutory history of the Act reveals that Congress at the time of the Act's passage, was concerned with the imbalance of the bargaining power between dealers and manufacturers in their contractual relationship. The manufacturer was in a position to dictate the terms of the contract and the operation of the dealership with the *1204 result that practices and conditions were too often being imposed upon dealers which jeopardized their investment in the dealership. The purpose of the Act was to protect dealers so dealt with by giving them a cause of action over and above common law remedies, which had theretofore been virtually non-existent under the terms of the one-sided contracts. The statute provides cause of action for the failure of the manufacturer to act in good faith. 1956 U.S. Code Cong. and Admin.News, pages 4596-4609.
Plaintiff relies upon Kavanaugh v. Ford Motor Company, 353 F.2d 710 (7th Cir. 1965) to support his standing to sue as an "automobile dealer". In Kavanaugh the court had before it on motion for summary judgment not only the agreements in issue, but also evidence of surrounding facts and circumstances. The court there found that the dealer corporation was set up with the personal engagement of plaintiff Kavanaugh as the crucial consideration for the dealership agreement. All of the agreements were taken as a single integrated contract, from which, with the aid of facts in evidence, the court found that plaintiff was a dealer "operating under the terms of a franchise" within the meaning of the Act. In piercing the corporate veil, the court found that the corporation, controlled as it was by Ford, had been formed to evade the purpose of the Act. Pursuant to the Agreement, Kavanaugh had acquired over 360 shares of $100 non-voting common stock prior to termination by Ford almost four years later.
In the instant case, although there may be found some parallel language in the agreements stressing reliance on plaintiff Lewis, there are significant, and in our opinion, controlling differences. The Chrysler Management Agreement was limited in term to the period July 31, 1967 to December 31, 1968. Plaintiff Lewis had no right of renewal, regardless of his investment in the dealership. He had no right to acquire shares of or invest in the dealership corporation until the day upon which the Management Agreement terminated by its terms, December 31, 1968, and plaintiff does not allege that he had, prior to termination acquired any equity in the dealership corporation. All funds advanced by plaintiff were clearly in escrow and subject to the provisions of the Management Agreement.
The principal distinction, then, between the instant case and Kavanaugh is that Kavanaugh became both operator and investor prior to termination. Here, the parties contemplated a trial period limited in time during which plaintiff would operate the business but could not invest in it. He was not a party to the dealership agreement and the agreement contemplated that during the effective period of the Management Agreement he would have no investment or equity in the dealership. Thus, if as occurred Chrysler should terminate the agreement, plaintiff would not have at risk his "personal fortune", and thereby be subject to the economic coercion which the Act was intended to prevent. See Kavanaugh, supra, 353 F.2d p. 717. The agreements, as set forth in the complaint, establish on their face a dealership and an operator; they do not on their face show that plaintiff was a dealer operating under the terms of a franchise within the meaning of the Act.
In their respective briefs, plaintiff and defendant both appended copies of additional documents. These copies were not in affidavit form and do not rise to the dignity of exhibits which might be considered along with the Motion to Dismiss as if for Summary Judgment. Rule 12(b) F.R.Civ.P. Accordingly, they have not been considered, nor were other factual representations made in the course of oral argument, but not incorporated in the complaint, considered in connection with this motion.
Plaintiff relies for jurisdiction, and for its cause of action entirely upon Title 15, United States Code § 1221 et seq. Since the court here finds and concludes from the complaint that plaintiff *1205 is not an automobile dealer, as defined in that Act, plaintiff has no standing to sue under the Act and plaintiff has failed to state a claim upon which relief can be granted.
Accordingly, defendant's Motion to Dismiss should be and hereby is sustained.